IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION



SOUTHERN DISTRICT OF MISSISSIPPI
FILED

JUL 23 2014

ARTHUR JOHNSTON
BY_____ DEPUTY

PRO-LIFE MISSISSIPPI, DANA ⟩
CHISHOLM, ESTER MANN, JOHN ⟩
BREKEEN, LAURA DURAN, DOUG LANE, ⟩
RONALD NEDERHOED, BERKELEY ⟩
OSTRANDER, and CALVIN ZASTROW, ⟩

          Plaintiffs, ⟩

v. ⟩

LINDSAY HORTON, individually and in his ⟩
official capacity as Chief of Police for the City ⟩
of Jackson, Mississippi; JESSE ROBINSON, ⟩
individually and in his official capacity as an ⟩
officer for the City of Jackson Mississippi ⟩
Police Department; JAMES McGOWAN, ⟩
individually and in his official capacity as an ⟩
officer for the City of Jackson Mississippi ⟩
Police Department; MARY JAMES, ⟩
individually and in her official capacity as an ⟩
officer for the City of Jackson Mississippi ⟩
Police Department; MARIE HAMPTON, ⟩
individually and in her official capacity as an ⟩
officer for the City of Jackson Mississippi ⟩
Police Department; JAMES ROSS, ⟩
individually and in his official capacity as an ⟩
officer for the City of Jackson Mississippi ⟩
Police Department; WILLIS THOMAS, ⟩
individually and in his official capacity as an ⟩
officer for the City of Jackson Mississippi ⟩
Police Department; UNKNOWN OFFICERS 1 ⟩
- 10, individually and in their official capacity ⟩
as officers for the City of Jackson Mississippi ⟩
Police Department; and the CITY OF ⟩
JACKSON, MISSISSIPPI, ⟩

          Defendants. ⟩

Case No. **3:14cv568 CWR-FKB**

JURY TRIAL DEMANDED

1

# COMPLAINT FOR CIVIL RIGHTS VIOLATIONS, DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, AND DAMAGES

## INTRODUCTION

1.     This is a civil rights action brought pursuant to 42 U.S.C. § 1983 that challenges specific police misconduct as well as policies, customs, and practices of the City of Jackson whereby it continually and systematically infringed, and continues to infringe, upon the free speech rights of citizens by unlawfully arresting, citing, and threatening to arrest such citizens for conduct that is protected by the First and Fourteenth Amendments to the United States Constitution as well as the Constitution of the State of Mississippi.

2.     Six years ago, this Court, Honorable William H. Barbour, Jr., presiding, entered a consent decree (hereinafter the "Consent Decree") against the City of Jackson, its Chief of Police and various officers, because of the Jackson Police Department's pervasive policy of violating the free speech rights of Plaintiff Pro-Life Mississippi and individual pro-life advocates by discriminatory and unconstitutional enforcement of Mississippi statutes.   The Consent Decree prohibited, among other things,  the City from "engag[ing] in any act or practice that has the purpose of effect of unlawfully inhibiting the exercise of any person's First Amendment rights on the public sidewalk or right of way," and from "favoring or disfavoring any person or group because of his or its political, religious, or philosophical positions on any issue."  The City agreed to "initiate a program of mandatory annual training in First Amendment rights and the response to the exercise of those rights, instructing its law enforcement personnel in respect for such rights." A copy of the Consent Decree is attached hereto as Exhibit A.

3.     Almost exactly one year after the Consent Decree was entered, the City and its police officers resumed their practice of infringing on the rights of Plaintiff Pro-Life Mississippi and others who express a viewpoint unpopular with the city authorities.  Under the guise of enforcing laws against obstruction of public sidewalks and disturbing the peace, Jackson police officers have harassed, threatened, cited, and arrested individuals exercising their free speech rights.

4.     The unconstitutional practices of the Defendants deprived Plaintiffs of their right to free speech, as well as those of third parties not before the Court.  Plaintiffs and others have suffered, are suffering, and will continue to suffer irreparable injury to their First Amendment rights absent the declaratory and injunctive relief sought by this Complaint.

5.     By this present action, Plaintiffs seek declaratory relief, damages for past violations of their rights, a finding that the City is in contempt of the Consent Decree, and a permanent injunction carrying specified prospective sanctions against the City sufficient to deter future violations.

JURISDICTION AND VENUE

6.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(3) in that the controversy arises under the United States Constitution and under 42 U.S.C. § 1983.  The Court has authority to grant the requested relief under 28 U.S.C. § 1343(a)(4) and award attorneys' fees under 42 U.S.C. § 1988.  The Court may address the declaratory relief requested pursuant to 28 U.S.C. §§ 2201 and 2202.  The Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

7.      Venue is proper in the Southern District of Mississippi, Jackson Division pursuant to 28 U.S.C. § 1391(b), because the conduct complained of occurred in this District.

PARTIES

8.      Plaintiff Pro-Life Mississippi is a non-profit corporation duly organized and existing under the laws of the State of Mississippi, and is a corporate entity capable of suing and being sued.

9.      Plaintiffs Laura Duran ("Duran"), Dana Chisholm ("Chisholm"), Doug Lane ("Lane"), and Berkeley Ostrander ("Ostrander") are citizens of the United States, of the State of Mississippi, are pro-life activists and were participants with Pro-Life Mississippi at the time the events complained of herein occurred. Chisholm is, and was at the time the events complained of herein occurred, also the President of Pro-Life Mississippi.

10.     Plaintiff John Brekeen ("Brekeen") is a citizen of the United States and a resident of Mississippi.

11.     Plaintiff Ester Mann ("Mann") is a citizen of the United States, a resident of Mississippi, and the Secretary of the Board of Pro-Life Mississippi.

12.     Plaintiff Ronald Nederhoed ("Nederhoed") is a citizen of the United States and a resident of Mississippi.

13.     Plaintiff Calvin Zastrow ("Zastrow") is a citizen of the United States and a resident of Michigan.

14.     Defendant City of Jackson ("the City") is, and at all times herein mentioned was, a municipal corporation organized and existing under the laws of the State of Mississippi, and is a corporate entity capable of suing and being sued. Defendant City maintains and operates the City of Jackson Police Department ("JPD"), which, in the first instance, is responsible for the

4

enforcement municipal ordinances and state statutes in the City.

15.     Defendant Lindsay Horton ("Horton") was at all times pertinent to this Complaint the Chief of Police for the Jackson Police Department

16.     Jesse Robinson ("Robinson") is, and at all times mentioned herein was, employed by the City as a sworn police officer with the JPD, and in doing the acts hereinafter described, acted within the course and scope of his authority and employment with the City and pursuant to the official policies, customs, procedures, and usages of the City and was an agent of each of the other defendants. He is sued in his individual and official capacity.

17.     James McGowan ("McGowan") is, and at all times mentioned herein was, employed by the City as a sworn police officer with the JPD, and in doing the acts hereinafter described, acted within the course and scope of his authority and employment with the City and pursuant to the official policies, customs, procedures, and usages of the City and was an agent of each of the other defendants. He is sued in his individual and official capacity.

18.     Marie Hampton ("Hampton") is, and at all times mentioned herein was, employed by the City as a sworn police officer with the JPD, and in doing the acts hereinafter described, acted within the course and scope of her authority and employment with the City and pursuant to the official policies, customs, procedures, and usages of the City and was an agent of each of the other defendants. She is sued in his individual and official capacity.

19.     Mary James is, and at all times mentioned herein was, employed by the City as a sworn police officer with the JPD, and in doing the acts hereinafter described, acted within the course and scope of his authority and employment with the City and pursuant to the official policies, customs, procedures, and usages of the City and was an agent of each of the other defendants. She is sued in her individual and official capacity.

20.     James Ross is, and at all times mentioned herein was, employed by the City as a sworn police officer with the JPD, and in doing the acts hereinafter described, acted within the course and scope of his authority and employment with the City and pursuant to the official policies, customs, procedures, and usages of the City and was an agent of each of the other defendants. He is sued in his individual and official capacity.

21.     Willis Thomas is, and at all times mentioned herein was, employed by the City as a sworn police officer with the JPD, and in doing the acts hereinafter described, acted within the course and scope of his authority and employment with the City and pursuant to the official policies, customs, procedures, and usages of the City and was an agent of each of the other defendants. He is sued in his individual and official capacity.

22.     Unknown Officers 1-10 at all times mentioned herein were employed by the City as sworn police officers with the JPD, and in doing the acts hereinafter described acted within the course and scope of their authority and employment with the City and pursuant to the official policies, customs, procedures, and usages of the City and were agents of each of the other defendants. They are sued in their individual and official capacities.

## ALLEGATIONS OF FACT

23.     Plaintiffs were participants with Pro-Life Mississippi at the time the events herein described took place.

24.     Pro-Life Mississippi is a Christian pro-life activism organization dedicated to educating the citizens of Mississippi about the sanctity of human life and the dangers of abortion. Through the use of rallies, signs, educational literature and intelligent public debate, Pro-Life Mississippi challenges the citizens of Mississippi to come to understand the dangers of abortion and injuries the practice causes, not only upon individuals but also upon American social and

political life. Pro-Life Mississippi's purpose is to inform and persuade concerning this matter of great social, political, and religious interest.

25.     Since 1996, Pro-Life Mississippi has held rallies on the public ways of the City including at or near the abortion clinic self-titled as the Jackson Women's Health Organization (hereinafter "JWHO") located at 2903 North State Street. During such rallies, Plaintiffs and members and supporters of Pro-Life Mississippi express their views on abortion, pray, and sing. As part of this peaceful pro-life advocacy, members of Pro-Life Mississippi offer literature and sidewalk counseling to persons approaching the clinic by way of said public ways, streets, and sidewalks. This is done in an effort to persuade women not to abort their unborn babies by offering alternatives to abortion, including adoption, advice, and emotional support.

26.     Plaintiffs and other participants with Pro-Life Mississippi regularly stand, walk, hold signs, hand out literature, sit, speak to passersby, and sidewalk counsel on the public sidewalks and public right of ways around and near the JWHO. Plaintiffs locate themselves so as to convey their message to women entering the facility and to passersby, but they do not obstruct or interfere with the free passage of pedestrians or patients on the public roads, right-of-ways, or sidewalks.

27.     For years, dating back to before 1996, JPD has harassed pro-life demonstrators and street preachers on the public ways of the City by citation, arrest, and threats of same on trumped up charges such as violating City ordinances (such as noise, signs, obstructing sidewalks ordinances) and State statutes (such as disorderly conduct, disturbing the peace, trespassing, or obstructing traffic statutes). Often, JPD officers have cited or arrested demonstrators and street preachers only to have the charges dropped or dismissed before trial. On the few occasions when these cases have actually gone to trial, the pro-life demonstrators and street preachers have often

been found not guilty.

28. In 2006, Pro-Life Mississippi sought the protection of this Court, asking for damages and for an injunction to enjoin the discriminatory and content-based enforcement of City ordinances and state statutes against free-speech activities of Pro-Life Mississippi members and supporters. A copy of the referenced complaint is attached hereto as Exhibit "B." In response, the City agreed to cease its unconstitutional enforcement actions and agreed to this Court's Consent Decree (Exhibit "A" attached hereto) ordering cessation of such unconstitutional enforcement actions as consideration for settling Pro-Life Mississippi's complaint and request for injunction.

29. In violation of both the letter and the spirit of the Consent Decree, the City, through its police department and officers, has continued to violate the Constitutional rights of supporters and members of Pro-Life Mississippi. Selected examples of the City's continued unconstitutional enforcement follow:

30. In or about April 2009, JPD commander Kenneth Goodrum threatened Pro-Life Mississippi supporter Bryan Logan with arrest because Mr. Logan was letting his pro-life sign rest on the public sidewalk near JWHO - not because Mr. Logan's sign was left unattended or unsupervised (the sign was attended at all times) but simply because the sign was resting on the sidewalk by Mr. Logan. Commander Goodrum said that such signs must be held by the speaker at all times. There is no statute or ordinance that imposes such a requirement. This threat by Commander Goodrum was clearly content based, unconstitutional interference with Mr. Logan's exercise of First Amendment rights. JPD officers do not enforce any City ordinance or state statute to interfere with numerous other speakers who let their signs rest on public sidewalks in the City of Jackson.

31.     Also, in or about April 2009, unknown Jackson police officers threatened Pro-Life Mississippi supporter Roy McMillan with arrest because Mr. McMillan was allowing his pro-life sign to rest on the public sidewalk near JWHO.  Mr. McMillan had constructed his sign in a sandwich-board style that could stand alone on the sidewalk.  The threat by these Jackson police officers was clearly a content based, unconstitutional interference with Mr. McMillan's exercise of First Amendment rights.  JPD officers do not enforce any City ordinance or state statute to interfere with numerous other speakers who place sandwich board style signs on City sidewalks.

32.     By letter dated April 23, 2009, Pro-Life Mississippi called the foregoing violations of the Consent Decree to the attention of Commander Goodrum and demanded that such violations cease.  Attached hereto as Exhibit C is a copy of this letter.  The violations did not cease.

33.     On or about April 28, 2010, JPD officer Rosemary Harper (one of the named defendants in the 2006 case from which the Consent Decree came) threatened Pro-Life Mississippi supporter Roy McMillan with arrest for "disturbing the peace" unless Mr. McMillan stopped passing out pro-life pamphlets and talking to persons passing by him on the public sidewalk near JWHO.

34.     In or about July 2010, the City of Jackson police and attorneys prosecuted Mr. McMillan for violation of the City's sign ordinance because Mr. Millan had allowed his pro-life sign to rest on the sidewalk near JWHO.  These charges against Mr. McMillan were dismissed by the Municipal Court.

35.     On many days in 2011, specifically including every Thursday and Friday in June 2011, JPD officers threatened supporters of Pro-Life Mississippi who were holding signs on the public sidewalk near JWHO and talking to persons walking nearby.  The officers threatened to

arrest these supporters on charges of disturbing the peace.

36.     In or about October 2012, JPD officers threatened to arrest Plaintiff Ester Mann and other supporters of Pro-Life Mississippi for holding pro-life signs while standing on the public sidewalk near JWHO.

37.     On February 28, 2013, Plaintiff Ester Mann was holding a pro-life sign, letting it rest beside her on the public sidewalk near JWHO when Defendant Jesse Robinson approached with other officers ordering that Mann be arrested.  Defendant McGowan arrested Mann and charged her with obstructing a public sidewalk in violation of Mississippi Code § 97-35-25. Mann was not obstructing the sidewalk. The public sidewalk at that location was wide enough to accommodate Mann, her sign, and any passersby who might come by, though in fact there were virtually no passersby at the time.  After having to appear in court for arraignment and three different trial settings, the City of Jackson Municipal Court dismissed the charges on November 25, 2013.

38.     On February 28, 2013, Plaintiff John Brekeen was holding a pro-life sign, letting it rest beside him on the public sidewalk near JWHO.  Defendant McGowan and other unknown officers arrested Brekeen and charged him with obstructing a public sidewalk in violation of Mississippi Code § 97-35-25.  Brekeen was not obstructing the sidewalk. The public sidewalk at that location was wide enough to accommodate Brekeen, her sign, and any passersby who might come by, though in fact there were virtually no passersby at the time.  After having to appear in court for arraignment and three different trial settings, the City of Jackson Municipal Court dismissed the charges on November 25, 2013.

39.     On March 1, 2013, Plaintiff Calvin Zastrow was holding a pro-life sign, letting it rest beside him on the public sidewalk near JWHO.   Defendant McGowan and JPD officers

James Ross and Willis Thomas arrested Zastrow and charged him with obstructing a public sidewalk in violation of Mississippi Code § 97-35-25. McGowan, James Ross, and Willis Thomas also seized and took possession of Zastrow's pro-life sign. Zastrow was Constitutionally entitled to use the public sidewalk to stand, hold signs, and exercise his First Amendment rights. Additionally the public sidewalk at that location was wide enough to accommodate Zastrow, his sign, and passersby at the same time, though there were virtually no passersby at this place and time. The City of Jackson Municipal Court dismissed these charges on August 19, 2013.

40.     When Zastrow appeared before the City of Jackson Municipal Court for the trial of the 3/1/2013 charges, he learned that he was also being prosecuted for two events that occurred in 2006 for which the City was continuing to charge him - in violation of the Consent Decree. The charges were for obstruction of a public sidewalk and disorderly conduct. These charges were dismissed on August 19, 2013.

41.     Notwithstanding the dismissal of charges against Zastrow, JPD has refused to return Zastrow's pro-life sign, in violation of paragraph 9 of the Consent Decree. As a result, Zastrow has been denied the use of his valuable property, while the City has converted to its own use property belonging to Zastrow.

42.     In or about April 2013, JPD officers told Plaintiffs that they were not permitted to sit in chairs (while holding their pro-life signs and literature) on the paved sidewalk adjacent to JWHO on Fondren Place. Plaintiffs provided JPD officers with a survey plat showing that both the paved sidewalk and unpaved region where a sidewalk would otherwise be adjacent to JWHO on Fondren Place are public right of ways and public property. JPD acknowledged plaintiffs' information and did not that day further interfere with Pro-Life Mississippi supporters who exercised their First Amendment rights by sitting and holding signs on the paved sidewalk. Two

days later, JPD officers detained Plaintiff Ester Mann and threatened to arrest her based on the same conduct that JPD officers had said was permissible two days earlier.

43.     On or about September 30, 2013, Life Legal Defense Foundation, by letter to the City's chief prosecutor, called the City's attention again to the fact that the City's arrests, threats, and other abusive treatment of pro-life sidewalk counselors were violations of the First Amendment and the clear teaching of U.S. Supreme Court case law. A copy of the Life Legal Defense Foundation letter is attached hereto as Exhibit "D." The City provided no substantive response, and the unconstitutional harassment continued.

44.     On October 2, 2013, a JPD officer (a Sergeant Donaldson) threatened to arrest Plaintiffs Ester Mann and Ronald Nederhoed for violation of Mississippi Code § 97-35-25 for sitting in lawn chairs (while holding protest signs and literature) on the wide public sidewalk on Fondren Place. Plaintiffs Mann and Nederhoed were not obstructing the sidewalk.

45.     On December 4, 2013, Plaintiff Ester Mann and Ronald Nederhoed were holding pro-life signs, letting the signs rest beside them her as they sat in small lawn chairs on the public sidewalk near JWHO exercising her First Amendment right to free speech. Defendant Marie Hampton approached and ordered that they be arrested. Defendant Mary James arrested Mann and Nederhoed and charged them with obstructing a public sidewalk, in violation of Mississippi Code § 97-35-25. Neither Mann nor Nederhoed was obstructing the public sidewalk. The public sidewalk at that location was wide enough to accommodate them, their signs, their small chairs, and any passersby who might come by, though, in fact, any passersby were few. Nederhoed and Mann were sitting side-by-side so as to leave plenty room on the sidewalk for other personas, should any wish to pass by on the sidewalk. On February 13, 2014, when Mann and Nederhoed appeared for arraignment as ordered by the issued citation, the City of Jackson Municipal Court

cancelled the arraignment because the City could not find any record of the charges. The City still retains possession of Nederhoed's Bible, chair, and small sign, in violation of the Consent Decree.

46.     On January 21, 2014, Plaintiff Doug Lane, while preaching on the public sidewalk near JWHO, was detained by unknown JPD officers who claimed Lane was too loud. In violation of the Consent Decree, these officers threatened to arrest Lane if he did not keep quiet.

47.     On March 5, 2014, Plaintiffs and other pro-life supporters gathered on the public sidewalk near the intersection of State Street and Fondren Place (near JWHO) to speak publicly on the subject of abortion as part of the 40 Days For Life national prayer campaign. JPD Officers Mary James and Vincent Grizzell repeatedly violated the free speech rights of Plaintiffs and others by multiple threats of arrest and orders that speakers move from one place to another. These officers had no lawful basis for their threats. Rather, these officer intended to disrupt Plaintiffs' exercise of free speech rights because the officers, in accordance with the City's policy, actively seeks to hinder and interfere with Plaintiffs' free speech because the City does not like the content of Plaintiffs' message.

48.     On or about June 9, 2014, Pro-Life Mississippi supporter Roy McMillan was using the public sidewalk to offer literature to those approaching JWHO. For purposes of personal comfort, Mr. McMillan was sitting in his lawfully parked car when no one was approaching. JPD Officer Mary James approached Mr. McMillan sitting in the car, ordered Mr. McMillan to stay in the car, and threatened to arrest Mr. McMillan if he got out of the car again. At the same time, JPD Officer Mary James permitted those who were advocating in favor of abortion to use the public sidewalk without threat of arrest. Under threat of arrest, Mr. McMillan's exercise of his First Amendment rights were chilled; he was forced to leave rather than exercise his First Amendment rights.

49.     On July 1, 2014, Plaintiff Ester Mann was exercising her First Amendment rights while sitting in a chair on a grassy/sod sidewalk that continues on the right-of-way traveling west on Fondren Place. At the same time, Plaintiff Ron Nederhoed was standing near Mann in the gutter next to the curb and speaking to a young woman and her 19-month old son, who had stopped to speak with Nederhoed as they passed by. JPD officer Mary James drove by and told Nederhoed that he could not stand in the gutter. JPD officer Mary James threatened to arrest Nederhoed claiming, "This property belongs to the City and you cannot be on it." Mann told James that the street and sidewalk were public property and that they had a right to exercise their free speech rights. James told Mann, "I do not like your tone and if you do not do what I say, I will give you a free ride downtown." Fearing that James would arrest her, Plaintiff Mann stopped speaking. Nederhoed also feared he would be arrested and moved away from Mary James. James then drove away.

50.     The City through its police department and officers interpret and enforce City ordinances and State statutes in inconsistent ways, with the specific purpose of thwarting speech, the content of which is disfavored by the City, JPD, or the enforcing officer. Persons whose speech is disfavored by the City can never be sure whether their conduct will or will not be charged as a violation of some law as conveniently construed by JPD. Examples of JPD's selective, discriminatory, and inconsistent enforcement actions follow.

51.     JPD officers have ordered Plaintiffs to hold signs in the air on all public sidewalks and right of ways. JPD officers have further told Plaintiffs that allowing their signs to touch the ground constitutes an obstruction, in violation of unspecified laws, regardless of whether there is ample room for others to also utilize the public right of way or whether others are utilizing the public way. All the while, political and other type signs and displays are found throughout the

City being held by persons sitting in lawn chairs on sidewalks while the sign rests on the sidewalk, or signs on sidewalks are left unattended. Plaintiffs are informed and believe that, as to these signs and those who hold them, there is no action or threat of arrest by JPD.

52. Similarly, other speakers, the content of whose speech is acceptable to JPD, place sandwich-board style signs on the adjoining sidewalks or place displays in the public right of way along Fondren Place and State Street (in the vicinity of JWHO). Plaintiffs are informed and believe that these speakers are not cited or threatened for violating any City ordinance or State statute by JPD.

53. At one point, JPD officers told Plaintiffs that Plaintiffs may hold signs while sitting in lawn chairs on the public right-of-way but only in an unpaved, dirt area that is west of an identified driveway along Fondren Place.

54. JPD officers allow pro-abortion speakers to stand and sit anywhere along the public sidewalk or right-of-way both east and west of the identified driveway without arrest or threat of arrest.

55. JPD has a policy and practice, implemented as seen in the examples above, of interpreting and applying City ordinances and State statutes to harass, intimidate, discriminate against, and injure those exercising their First Amendment rights of free speech whenever JPD or its officer do not like the content of the speech.

56. Defendant Horton, as Chief of Police for JPD, is responsible for the policies and practices of the JPD, for assuring proper training JPD officers, and for assuring training required by the Consent Decree. Upon information and belief, Horton had knowledge of and approved the treatment of Plaintiffs as alleged herein.

57.     There have been many occasions during times pertinent to this Complaint where persons in the City of Jackson promoted causes by holding signs, while sitting in lawn chairs, on stools, and similar on public sidewalks and letting the signs rest on the public sidewalk. Plaintiffs are informed and believe that JPD officers did not, and do not charge such persons with violation of any of the City ordinances or state statutes enforced against Plaintiff and supporters of Pro-Life Mississippi.

58.     While threatening arrest, JPD officers have told Plaintiffs that they are not permitted (while exercising their First Amendment rights) to walk on the paved public sidewalk where the identified driveway crosses the public sidewalk, even when no person or automobile is attempting to use the driveway. JPD officers have told Plaintiffs that their traversing the driveway-sidewalk intersection (on the public right-of-way) automatically constitutes a violation the law (presumably the obstruction ordinance or statute), regardless of the circumstances. All the while, JPD does not arrest, threaten to arrest, or otherwise hinder pro-abortion speakers traversing along the sidewalk over the identified driveway, nor do they threaten to arrest citizens throughout the City of Jackson who routinely walk on public sidewalks traversed by driveways.

59.     Plaintiffs reasonably fear that they and other supporters of Pro-Life Mississippi will be arrested by JPD for conduct that is protected by the U.S. and Mississippi Constitutions.

60.     As a result of Defendants' conduct, Plaintiffs have lost time, been deprived of property, and been required to incur expenses to defend themselves against unlawful charges by Defendants.

61.     Plaintiffs are planning a free-speech, pro-life rally on July 27, 2014 on the public right-of-ways near JWHO and have substantial reason (as set forth above) to believe that the unconstitutional behavior of the JPD will continue to escalate and Plaintiffs will be hindered,

restrained, and likely arrested and prosecuted for exercising their First Amendment rights, all making the need for injunctive relief urgent.

62.    Plaintiffs have repeatedly offered and requested to meet with officials from the City of Jackson to address this pattern of abusive conduct by JPD officers. Despite repeated assurances that a meeting would be held, the City has refused to schedule any meeting.

ALLEGATIONS OF LAW

63.    All of the acts of the Defendants, their officers, agents, servants, and employees, as alleged herein, were done or are threatened to be done, under color of law and pretense of statues and ordinances of the City of Jackson and the State of Mississippi.

64.    Public streets and sidewalks are traditional public fora for purposes of speech and other expressive activities protected by the First and Fourteenth Amendments to the United States Constitution.

65.    Defendants' repeated use of City ordinances and State statutes, including but not limited Mississippi Code § 97-35-25, to stifle and suppress the First Amendment rights of Plaintiffs constitutes policies, practices, customs, and usages sufficient to impose municipal liability.

66.    The unlawful actions of the JPD officers as alleged herein were taken and ratified by final policy makers for the City of Jackson and thus constitute policies, practices, customs, and usages sufficient to impose municipal liability.

67.    The continued and systematic violation of this Court's March 14, 2008 Consent Decree by enforcement of City ordinances and State statutes, including but not limited Mississippi Code § 97-35-25, to stifle and suppress the First Amendment rights of Plaintiffs constitutes policies, practices, customs, and usages sufficient to impose municipal liability.

68.     The continued and systematic violation of this Court's Consent Decree by enforcement of City ordinances and State statutes, including but not limited Mississippi Code § 97-35-25, to stifle and suppress the First Amendment rights of Plaintiffs is intentional, contumacious conduct calling for exercise of the Court's power to hold the City of Jackson in contempt.

69.     The failure of the City to provide its police officers training in the areas of First Amendment rights, use and identification of traditional fora, and specifically on the Consent Decree amounts to deliberate indifference to the Constitutional rights of Plaintiffs, an intentional and contumacious disregarding of the Court's Consent Decree, and constitutes policies, practices, customs, and usages sufficient to impose municipal liability.

70.     The actions taken by Defendants as alleged herein were extreme and in reckless disregard of the rights of Plaintiffs who were not engaged in any crime at the time of the wrongful action by Defendants.

71.     The City ordinances and State statutes, specifically including the obstruction of public sidewalk ordinance and Mississippi Code § 97-35-25 and the disorderly conduct statute, as enforced by Defendants, is content- and viewpoint-based, abuses governmental power, denies free speech in a traditional public forum, does not further any important or substantial government interest, and imposes restrictions that are greater than necessary to further any government interest asserted.

72.     Specifically but not exclusively, these ordinances and statutes, as enforced by Defendants, are content-based because the main effect of JPD enforcement is to suppress speech having content that is disliked by the City.

73.     Specifically but not exclusively, these ordinances and statutes, as enforced by Defendants, are viewpoint-based because the main effect of JPD enforcement is to suppress speech of a certain viewpoint. JPD does not enforce the statute against persons who speak or hold signs or sit on public sidewalks while speaking and holding signs for the purpose of communicating messages that are not pro-life. JPD enforces these ordinances and statutes in the manner described herein only against those who are communicating pro-life positions.

74.     Specifically but not exclusively, the ordinances and statutes are not narrowly tailored to serve any significant governmental interest and impose restrictions that are greater than necessary to further any significant governmental interest because, as applied, they restrict free speech activity on the public right of way that does not interfere with general use of the public right of way.

75.     Any interest advanced by Defendants to support enforcement of these ordinances or statutes against Plaintiffs is related to the suppression of constitutional and statutory rights and is insignificant compared to the infringement of rights caused by Defendants' enforcement.

## FIRST CAUSE OF ACTION
42 U.S.C. § 1983: Free Speech and Due Process

76.     Plaintiffs reallege paragraphs 1 through 75 of this Complaint and incorporate them herein by this reference.

77.     The acts of Defendants alleged herein deprived Plaintiffs of their rights of free speech, peaceable assembly, and free exercise of religion as guaranteed by the First and Fourteenth Amendments to the Constitution of the United States.

78.     Defendants''s unlawful and unreasonable use of City ordinances and State statutes hindered and deprived Plaintiffs of their ability to effectively communicate their pro-life message.

79.     The acts of Defendants and their officers, agents, servants, and employees were done, or threatened to be done, under color of law and pretense of ordinances of the City and statutes of the State of Mississippi.

80.     Defendants committed these acts in the presence of other activists and the public. Plaintiffs did not consent to Defendants' acts described herein and found them to be harmful and offensive to their rights and person and dignity.

81.     Defendants intended to, and did, by their actions, prevent the exercise of Plaintiffs' rights of free speech, free exercise of religion, and peaceable assembly as guaranteed by the First and Fourteenth Amendments to the United States Constitution.

82.     The actions of Defendants in hindering and depriving Plaintiffs of their ability to effectively communicate their message are unconstitutional abridgements of Plaintiffs' affirmative rights to freedom of speech, free press, and the free exercise of religion secured by the First and Fourteenth Amendments to the United States Constitution.

83.     As a direct and proximate result of the Defendants' actions, policies, customs and practices as alleged in this complaint, Plaintiffs are chilled in the exercise of their rights, deprived of their rights to free speech, and Plaintiffs suffered pain, humiliation, embarrassment, discomfort, mental anguish, fear, anxiety, loss of reputation, loss of earnings and emotional distress.

84.     Unless enjoined by this Court, Defendants will continue to infringe Plaintiffs' constitutionally protected rights and thereby cause irreparable injury, as damages alone cannot fully compensate plaintiffs from the ensuing harm. This threat of injury from continuing violations requires injunctive relief.

## SECOND CAUSE OF ACTION
### 42 U.S.C. § 1983: Free Speech and Due Process

85.     Plaintiffs reallege paragraphs 1 through 84 of this Complaint and incorporate them herein by this reference.

86.     Defendant City of Jackson, by its application and threat of application of the City ordinances and State statutes, specifically but not limited to Mississippi Code § 97-35-25, as alleged herein, violate Plaintiffs' affirmative rights to freedom of speech and due process under the United States Constitution, First and Fourteenth Amendments.

87.     The ordinances and statutes, specifically but not limited to Mississippi Code § 97-35-25, as applied or threatened to be applied are unconstitutionally overbroad restrictions on expressive activity.

88.     The ordinances and statutes, specifically but not limited to Mississippi Code § 97-35-25, as applied or threatened to be applied are  unconstitutionally vague restrictions on expressive activity.

89.     The ordinances and statutes, specifically but not limited to Mississippi Code § 97-35-25, as applied or threatened to be applied are content-based and viewpoint-based restrictions on speech.

90.     The ordinances and statutes, specifically but not limited to Mississippi Code § 97-35-25, as applied or threatened to be applied do not serve a significant governmental interest.

91.     The ordinances and statutes, specifically but not limited to Mississippi Code § 97-35-25,  as applied or threatened to be applied do not leave open ample alternative channels of communication.

92.     The ordinances and statutes, specifically but not limited to Mississippi Code § 97-35-25, as applied or threatened to be applied are not narrowly tailored to accomplish any permissible governmental purpose sought to be served by the legislation.

93.     The ordinances and statutes as interpreted, specifically but not limited to Mississippi Code § 97-35-25, and applied by the City fail to adequately advise, notify, or inform persons threatened with possible prosecution for violation of their requirements. Therefore, the ordinances and statutes are unconstitutionally vague as applied or threatened to be applied in violation of the due process guarantee of the Fourteenth Amendment to the United States Constitution.

94.     As applied or threatened to be applied, the ordinances and statutes, specifically but not limited to Mississippi Code § 97-35-25, are irrational and unreasonable, imposing unjustifiable restrictions on the exercise of protected constitutional rights. Therefore, the application of the ordinances and statutes as alleged herein by the City of Jackson violates the due process guarantee of the Fourteenth Amendment to the United States Constitution.

### THIRD CAUSE OF ACTION
### 42 U.S.C. § 1983: Equal Protection

95.     Plaintiffs reallege paragraphs 1 through 94 of this Complaint and incorporate them herein by this reference.

96.     Defendant City of Jackson, by its application and threat of application of the City ordinances and State statutes as alleged herein, specifically but not limited to Mississippi Code § 97-35-25, violate Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment. Specifically but not exclusively, the ordinances and statutes as applied create two classes of persons: 1) one class is those persons wishing to communicate by audible voice and by

use of signs while standing, sitting, kneeling, or holding signs on a public side walk or right of

way with those entering abortion clinics for purposes of encouraging them to choose life; and 2)

the second class is those persons wishing to communicate by audible voice and by use of signs

while standing, sitting, kneeling, or holding signs on a public side walk or right of way with the

general public about any other political, social, commercial, or other message,.

97.     As to those in the second class, JPD and the City leave them unhindered in their

use of public sidewalks and right-of-ways for the exercise of free speech rights.  But for those in

the first class, JPD and the City threaten, arrest, and prosecute them as violating City ordinances

or State statutes, specifically but not limited to Mississippi Code § 97-35-25, for the same activity

engaged in by the second class for the exercise of free speech rights.

98.     These classifications have a direct bearing on the fundamental interest in free

speech.  The City has no compelling interest justifying the creation of these classes and cannot

show that these classifications are necessary to serve any legitimate governmental interest.

99.     The ordinances and statutes as applied or threatened to be applied, specifically but

not limited to Mississippi Code § 97-35-25, violate the Equal Protection Clause of the Fourteenth

Amendment to the United States Constitution and similar guarantees in the Mississippi State

Constitution by denying to plaintiffs free speech rights and other protections of state and federal

law.

### FOURTH CAUSE OF ACTION
42 U.S.C. § 1983: Unlawful Retaliation

100.     Plaintiffs reallege paragraphs 1 through 99 of this Complaint and incorporate them

herein by this reference.

101.     Defendants' harassment, arrests, and threats of arrest were directed at Plaintiffs while Plaintiffs were engaged in constitutionally-protected speech activities.  Such threats of arrest and harassment constituted unlawful retaliation against Plaintiffs' exercise of constitutionally protected rights.  Such retaliation violated Plaintiffs' affirmative rights to freedom of speech secured by the First and Fourteenth Amendments to the United States Constitution.

102.     As a direct and proximate result of Defendants' actions in retaliating against Plaintiffs for the assertion and/or exercise of their constitutional rights, Plaintiffs were deprived of their rights to free speech.  Plaintiffs have suffered, are suffering, and will continue to suffer, irreparable harm as a direct result of Defendants' conduct.

## FIFTH CAUSE OF ACTION
### 42 U.S.C. § 1983: False Arrest

103.     Plaintiffs reallege paragraphs 1 through 102 of this Complaint and incorporate them herein by this reference.

104.     The actions of Defendant McGowan as alleged herein were intended to and did in fact detain Plaintiff John Brekeen.

105.     McGowan unreasonably and unlawfully seized Brekeen's person without probable cause to believe a crime occurred.

106.     Brekeen was aware of the seizure and detention and did not consent to them.

107.     McGowan lacked lawful authority to seize, detain, and deprive Brekeen of his liberty.  McGowan was grossly negligent in unreasonably and unlawfully seizing Brekeen.

108.     As a direct and proximate cause of Defendant McGowan's unlawful actions, Brekeen was injured in his Fourth and Fourteenth Amendment rights to be free from false arrest.

109.    The actions of Defendants Robinson, McGowan, Marie Hampton, and Mary James as alleged herein were intended to and did in fact detain Plaintiff Ester Mann.

110.    Defendants Robinson, McGowan, Marie Hampton, and Mary James unreasonably and unlawfully seized Mann's person without probable cause to believe a crime occurred.

111.    Mann was aware of the seizure, detention, and confinement and did not consent to them.

112.    Defendants Robinson, McGowan, Marie Hampton, and Mary James lacked lawful authority to seize, detain, and deprive Mann of her liberty. Defendants Robinson, McGowan, Marie Hampton, and Mary James were grossly negligent in unreasonably and unlawfully seizing Mann.

113.    As a direct and proximate cause of the unlawful actions of Defendants Robinson, McGowan, Marie Hampton, and Mary James, Plaintiff Ester Mann was injured in her Fourth and Fourteenth Amendment rights to be free from false arrest.

114.    The actions of Defendants McGowan, Willis Thomas, and James Ross as alleged herein were intended to and did in fact detain Plaintiff Calvin Zastrow.

115.    Defendants McGowan, Willis Thomas, and James Ross unreasonably and unlawfully seized Zastrow's person without probable cause to believe a crime occurred.

116.    Zastrow was aware of the seizure, detention, and confinement and did not consent to them.

117.    Defendants McGowan, Willis Thomas, and James Ross lacked lawful authority to seize, detain, and deprive Zastrow of his liberty. Defendant McGowan, Willis Thomas, and James Ross were grossly negligent in unreasonably and unlawfully seizing Zastrow.

118. As a direct and proximate cause of the unlawful actions of Defendants McGowan, Willis Thomas, and James Ross, Plaintiff Calvin Zastrow was injured in his Fourth and Fourteenth Amendment rights to be free from false arrest.

119. The actions of Defendant Mary James as alleged herein were intended to and did in fact detain Plaintiff Ronald Nederhoed.

120. Defendant Mary James unreasonably and unlawfully seized Nederhoed's person without probable cause to believe a crime occurred.

121. Nederhoed was aware of the seizure, detention, and confinement and did not consent to them.

122. Defendant Mary James lacked lawful authority to seize, detain, and deprive Nederhoed of her liberty. Defendant Mary James was grossly negligent in unreasonably and unlawfully seizing Nederhoed.

123. As a direct and proximate cause of Defendant Mary James's unlawful actions, Plaintiff Ronald Nederhoed was injured in her Fourth and Fourteenth Amendment rights to be free from false arrest.

SIXTH CAUSE OF ACTION
Mississippi Constitution Article 3, Section 11, 13, 14, AND 18

124. Plaintiffs reallege paragraphs 1 through 123 of this Complaint and incorporate them herein by this reference.

125. Defendant City of Jackson, by its application and threats of application of the ordinances and statutes against the free speech of Plaintiffs violated Article 3, Sections 11, 13, 14, and 18 of the Mississippi Constitution.

## SEVENTH CAUSE OF ACTION
### State Law Claim: Malicious Prosecution

126.    Plaintiffs reallege paragraphs 1 through 125 of this Complaint and incorporate them herein by this reference.

127.    Defendants McGowan, James Ross, Willis Thomas, and the City of Jackson instituted criminal proceedings and pursued prosecution of criminal charges against Plaintiff Calvin Zastrow with malice.

128.    The criminal charges against Zastrow were not based on probable cause, the state of the facts before the prosecutor for the City of Jackson would not lead a man of ordinary caution and prudence to believe, or entertain an honest or strong suspicion that Zastrow was guilty of a crime.

129.    Defendant City of Jackson had a duty to ascertain whether there was lawful basis and probable cause for prosecution of Zastrow.

130.    The prosecution was terminated in Zastrow's favor.

131.    As a direct and proximate result of the foregoing, Defendants McGowan, Willis Thomas, James Ross, and the City deprived Zastrow of his rights and privileges as a citizen of the United States, and these Defendants caused Zastrow to suffer financial injury, indignities, all to his general damage in a sum which will be proved at trial.

132.    Defendants Robinson, McGowan, Marie Hampton, Mary James and the City of Jackson instituted criminal proceedings and pursued prosecution of criminal charges against Plaintiff Mann with malice.

133.    The criminal charges against Mann were not based on probable cause, the state of the facts before the prosecutor for the City of Jackson would not lead a man of ordinary caution

and prudence to believe, or entertain an honest or strong suspicion that Mann was guilty of a crime.

134. Defendant City of Jackson had a duty to ascertain whether there was lawful basis and probable cause for prosecution of Mann.

135. The prosecution was terminated in Mann's favor.

136. As a direct and proximate result of the foregoing, Defendants Robinson, McGowan, Marie Hampton, Mary James and the City deprived Mann of her rights and privileges as a citizen of the United States, and these Defendants caused Mann to suffer financial injury, indignities, all to her general damage in a sum which will be proved at trial.

137. Defendants McGowan and the City of Jackson instituted criminal proceedings and pursued prosecution of criminal charges against Plaintiff Brekeen with malice.

138. The criminal charges against Mann were not based on probable cause, the state of the facts before the prosecutor for the City of Jackson would not lead a man of ordinary caution and prudence to believe, or entertain an honest or strong suspicion that Brekeen was guilty of a crime.

139. Defendant City of Jackson had a duty to ascertain whether there was lawful basis and probable cause for prosecution of Brekeen.

140. The prosecution was terminated in Brekeen's favor.

141. As a direct and proximate result of the foregoing, Defendants McGowan and the City deprived Brekeen of his rights and privileges as a citizen of the United States, and these Defendants caused Brekeen to suffer financial injury, indignities, all to his general damage in a sum which will be proved at trial.

142. Defendants Marie Hampton, Mary James and the City of Jackson instituted criminal proceedings and pursued prosecution of criminal charges against Plaintiff Nederhoed with malice.

143. The criminal charges against Nederhoed were not based on probable cause, the state of the facts before the prosecutor for the City of Jackson would not lead a man of ordinary caution and prudence to believe, or entertain an honest or strong suspicion that Nederhoed was guilty of a crime.

144. Defendant City of Jackson had a duty to ascertain whether there was lawful basis and probable cause for prosecution of Nederhoed.

145. The prosecution was terminated in Nederhoed's favor.

146. As a direct and proximate result of the foregoing, Defendants Marie Hampton, Mary James and the City deprived Nederhoed of his rights and privileges as a citizen of the United States, and these Defendants caused Nederhoed to suffer financial injury, indignities, all to his general damage in a sum which will be proved at trial.

### EIGHTH CAUSE OF ACTION
State Law Claim: Intentional Infliction of Emotional Distress

147. Plaintiffs reallege paragraphs 1 through 146 of this Complaint and incorporate them herein by this reference.

148. Defendants' false arrest, malicious prosecution, and violation of civil rights described herein above, all abused Plaintiffs Brekeen, Mann, Nederhoed, and Zastrow in a manner that was extreme, outrageous, and unjustified, and caused Plaintiffs Brekeen, Mann, Nederhoed, and Zastrow to suffer emotional distress.

149.    These intentional abuses of Brekeen, Mann, Nederhoed, and Zastrow were unjustified and done with actual malice and wanton indifference to and deliberate disregard for human life and the rights of plaintiff.

150.    As a direct and proximate result of the foregoing, Defendants deprived Brekeen, Mann, Nederhoed, and Zastrow of rights and privileges as a citizen of the United States, and these Defendants caused Brekeen, Mann, Nederhoed, and Zastrow to suffer financial injury, indignities, all to their general damage in a sum which will be proved at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court:

1.    Declare that Defendants' actions as alleged herein were unconstitutional;

2.    Declare the City to be in contempt of the March 14, 2008, Consent Decree;

3.    Enter preliminary and permanent injunctions enjoining Defendants, their agents, servants, employees, officials, or any other person acting in concert with them or on their behalf, from interfering with Plaintiffs' lawful speech on the public sidewalks and public right-of-ways in Jackson, Mississippi, including public sidewalks in the vicinity of Jackson Women's Health Organization, and establish a schedule of prospective monetary sanctions to be imposed against the City in the event of violation of the injunctions;

4.    Enter preliminary and permanent injunctions enjoining Defendants from threatening or using City ordinances and Mississippi Code § 97-35-25 to inhibit or suppress Plaintiffs' Constitutionally protected peaceful, expressive activities, and establish a schedule of prospective monetary sanctions to be imposed against the

City in the event of violation of the injunctions;

5.     Award Plaintiffs Laura Duran, Dana Chisholm, Doug Lane, Berkeley Ostrander and Pro-Life Mississippi nominal damages against all Defendants for the violation of their civil and Constitutional rights;

6.     Award Plaintiffs Brekeen, Mann, Nederhoed, and Zastrow compensatory damages in an amount to be proved at trial against Defendants Robinson, McGowan, Marie Hampton, Mary James, James Ross, Willis Thomas, and the City of Jackson for violation of their civil and Constitutional rights;

7.     Award Plaintiffs Brekeen, Mann, Nederhoed, and Zastrow compensatory damages in an amount to be proved at trial against Defendants Robinson, McGowan, Mary James, James Ross, Willis Thomas, and the City of Jackson for intentional torts committed against Plaintiffs Brekeen, Mann, Nederhoed, and Zastrow;

8.     Award costs, interest and attorneys' fees pursuant to 42 U.S.C. § 1988 et seq., and other pertinent federal law; and

9.     Grant such other and further relief as the court deems just and proper.


PRO-LIFE MISSISSIPPI, DANA CHISHOLM, ESTER MANN, JOHNNY BREKEEN, LAURA DURAN, DOUG LANE, RONALD NEDERHOED, BERKELEY OSTRANDER, and CALVIN ZASTROW


By: _____
          Steve C. Thornton (MSB #9216)

Of counsel:

Steve C. Thornton (MSB #9216)
P. O. Box 16465
Jackson, Mississippi 39236
Telephone: (601) 982-0313
Facsimile: (601) 957-6554
Email: mail@lawlives.com

Catherine W. Short (CA Bar No. 117442)*
Allison K. Aranda (CA Bar No. 215021)*
PO Box 890685
Temecula, CA 92589
Tel: (951) 296-2835
Fax: (951) 541-2711
akaranda@lldf.org

*Attorneys for the Plaintiffs*

* Application for admission Pro Hac Vice forthcoming